UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CIV-20741-BLOOM/Valle

MARIA DIAZ (Nee Ferrerr), and
ENRIQUE DIAZ,

    Plaintiffs,

v.

U.S. BANK, N.A., as trustee for
MLMI Surf Trust Series 2007-AB1,
WILSHIRE CREDIT CORPORATION, and
BANK OF AMERICA, N.A.,

    Defendants.
_____/

**ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**[1]

    This matter is before the Court upon Defendants, U.S. Bank, N.A., as trustee for the MLMI Surf Trust Series 2007-AB1 ("U.S. Bank"), Wilshire Credit Corporation ("Wilshire"), and Bank of America N.A.'s ("BANA") (collectively, "Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. [33].  The Court has reviewed the motion, all supporting and opposing filings, and the record in this case, and is otherwise fully advised in the premises.  For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**I. INTRODUCTION**

    The instant litigation stems from a foreclosure action initiated against Plaintiffs, Maria Diaz (Nee Ferrer) and Enrique Diaz ("Plaintiffs"), and relates to BANA's involvement in the Troubled Asset Relief Program ("TARP"), and, more specifically, the United States Treasury's

---

[1] Plaintiffs' Response was filed on August 22, 2014.  ECF No. [37].  Accordingly, Defendants' Reply was due September 2, 2014.  Although Defendants have seemingly opted not to reply, the Motion is nonetheless ripe for adjudication.

1

Home Affordable Modification Program ("HAMP").[2]  According to the First Amended Complaint, U.S. Bank initiated foreclosure proceedings on Plaintiffs' home in 2007.  ECF No. [24] at ¶ 4.  During this litigation, Wilshire allegedly entered into a stipulation agreement with Plaintiffs pursuant to the aforementioned federal programs, permitting Plaintiffs to pay installments in exchange for the dismissal of the foreclosure proceedings and a loan modification.  *Id.* at ¶¶ 5-8.  Then, in 2009, Wilshire offered Plaintiffs a Trial Period Plan ("TPP"), wherein Plaintiffs would make three monthly payments and the mortgage would be modified in order to avoid any future foreclosure.  *Id.* at ¶ 7.  Rather than comply with the terms of the TPP, Wilshire purportedly transferred Plaintiffs' loan to BANA, as one of its agents.  *Id.* at ¶¶ 9, 11-12.  At some point after the transfer, BANA allegedly attempted to accelerate Plaintiffs' loan.  *Id.* at ¶ 13.  According to Plaintiffs, they began communicating extensively with BANA; however, despite attempts to comply with BANA's multitude of requests, Plaintiffs contend that BANA utilized pernicious tactics in order to violate the terms of the TPP and to bully Plaintiffs into making unnecessary payments.  *Id.* at ¶¶ 14-20, 25-29.

As a result of these allegedly deceptive and deceitful practices, Plaintiffs initiated this action on February 28, 2014, asserting counts for breach of contract and breach of the duty of good faith and fair dealing, as well as a violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA").  *See* ECF No. [1].  On June 3, 2014, Plaintiffs filed an Amended Complaint[3] setting forth substantially similar claims, but further

---

[2] In short, the HAMP program may require a mortgage servicer to execute a loan modifications for eligible individuals suffering from financial hardship or various other reasons.  *See generally* Home Affordable Modification Program, makinghomeaffordable.gov,/programs/lower-payments/pages/hamp.aspx (last visited Sept. 11, 2014).

[3] Although Plaintiffs' Amended Complaint was impermissibly filed without leave of Court, subsequent to filing, the Court granted Plaintiff leave to amend.  *See* ECF Nos. [26] and [29].

delineating their causes of action, as well as adding various state law claims. *See* ECF No. [24]. Presently, Plaintiffs assert claims for breach of contract (Count I), violation of FDUTPA (Count II), civil theft (Count III), fraud (Count IV), breach of fiduciary duty (Count V), and negligence (Count VI). *See id.* at ¶¶ 33-38.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). The Supreme Court

was clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

Defendants assert that Plaintiffs' First Amended Complaint must be dismissed for several reasons. *See* ECF No. [33]. Defendants first claim that Plaintiffs' First Amended Complaint constitutes an impermissible "shotgun pleading." *Id.* at 5-6. Second, Defendants contend that even when ignoring the manner in which the First Amended Complaint is pled, the pleading nonetheless fails to state a claim upon which relief can be granted. *Id.* at 6-13. The Court addresses these arguments in turn.

#### A. "Shotgun Pleading"

This Court and the Eleventh Circuit has warned litigants that shotgun pleadings tend to "impede the orderly, efficient and economic disposition of disputes as well as the court's overall ability to administer justice." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1128–31 (11th Cir. 2001)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.10 (11th Cir. 2002) (expounding the various ways in which shotgun pleadings harm the courts and other litigants). By definition, a shotgun pleading does not comport with Rule 8's requirement of a short and plain statement of the claim. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Generally, this type of pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund*, 305 F.3d at 1295. At first glance, Plaintiffs' First Amended Complaint

may seem to "fit the bill"; however, further examination reveals that this pleading suffices in light of the circumstances.

Relying on *S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343 (S.D. Fla. 2013), Plaintiffs contend that their First Amended Complaint is adequately crafted. In *S.E.C.*, this Court held that a complaint was not a shotgun pleading because it did not incorporate every preceding allegation into each individual count, but rather, only incorporated the plaintiff's general allegations into the individual claims. *Id.* at 1354-55. Noting that all the background allegations were intended to be applicable to each count, the Court stressed that there was no other way for the plaintiff to re-plead, short of allowing the plaintiff to repeat the incorporated paragraphs into each count. *Id.* This Court finds this reasoning applicable and persuasive. Although Plaintiffs' First Amended Complaint merely sets forth thirty-one factual allegations seemingly applicable to all five counts, see ECF No. [34], the pleading is not incomprehensible. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1517 (11th Cir. 1991), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011) (describing a shotgun pleading as containing "rambling recitations" of fact). Like the complaint in *S.E.C.*, Plaintiffs' factual allegations are succinct, reasonably formatted, and describe the factual circumstances and general course of dealing applicable to each individual count. Amendment in this matter would simply require Plaintiffs to include nearly every factual allegation, almost verbatim, in the individual claims. *See generally Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (noting that the proper procedural move when presented with a shotgun pleading is to move the court to require the plaintiff to file a more definite statement). Moreover, and most notably, Plaintiffs are proceeding *pro se*. This Court is required to afford *pro se* litigants a leniency "not enjoyed by those with the benefits of a legal education." *See Houman v.*

*Lewis*, 2010 WL 2331089, at *1 (S.D. Fla. June 10, 2010) (citing *GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  Thus, pleadings submitted by a *pro se* litigant "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002) (citation omitted). Accordingly, the Court declines to find that Plaintiffs' Amended Complaint constitutes a shotgun pleading. *See Jones v. Florida Power & Light Co.*, 2010 WL 1740713, at *2 (S.D. Fla. Apr. 29, 2010) (finding that a complaint was not a shotgun pleading where the general allegations were incorporated into each count).

**B.  The Merits of Plaintiffs' Individual Claims**

Plaintiffs' first count is for breach of contract, presumably for breach of the TPP.  *See* ECF No. [37] at 5-7.  Defendants correctly assert that HAMP does not provide borrowers with a private right of action. *Nelson v. Bank of Am., N.A.*, 446 F. App'x 158, 159 (11th Cir. 2011) (per curiam) (citation omitted); *see also Zoher v. Chase Home Fin.*, 2010 WL 4064798, at *3-4 (S.D. Fla. Oct. 15, 2010) (determining that an implied private cause of action in HAMP is not in line with the legislative intent or scheme).  In response, Plaintiffs claim that their claim is not brought under HAMP, but rather, a breach of the TPP, which constitutes a distinct contract.  ECF No. [37] at 5-7.  Under Defendants' interpretation, the TPP and HAMP are intertwined in such a manner that asserting a right under the TPP necessarily implicates the HAMP; because the HAMP precludes a private cause of action, no such action can be brought pursuant to the TPP. While the Eleventh Circuit has yet to address this exact issue, several other districts have taken the opportunity to discuss the implication of the HAMP on TPPs.

In *Bosque v. Wells Fargo Bank*, the District of Massachusetts summarily rejected the argument that a TPP could not be enforced solely by reason of its relationship with the federal statute and regulations. *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 350-51 (D. Mass. 2011). Plaintiff's claim in *Bosque*, like the Plaintiffs' claim here, was premised upon state contract law, and neither the HAMP nor its applicable guidelines preempt such actions. *Id.* Following the reasoning of *Bosque*, the District of Maryland held that even though a private right of action does not exist under HAMP, a plaintiff may still assert a breach of contract claim stemming from a TPP. *Allen v. CitiMortgage, Inc.*, 2011 WL 3425665, at *4-5 (D. Md. Aug. 4, 2011). Other districts throughout the country have similarly found that the HAMP will not obviate a cause of action purely because the cause of action is in some manner related to the HAMP. *See Vida v. OneWest Bank, F.S.B.*, 2010 WL 5148473 (D. Or. Dec. 13, 2010) (finding that defendants were not necessarily immunized for their conduct even though the alleged transaction was associated with the HAMP); *Darcy v. CitiFinancial, Inc.*, 2011 WL 3758805, at *4 (W.D. Mich. Aug. 25, 2011) (holding that plaintiff's contract action "[was] not preempted or otherwise precluded by HAMP"); *see also Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 884 (9th Cir. 2013) ("Where, as here, borrowers allege, and we must assume, that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement.").[4] The Court finds the analysis in *Bosque* compelling—Plaintiffs' claim for breach of contract is not precluded by the fact that the HAMP does not confer an individual with a private right of action.

---

[4] However, some courts have found the opposite, that is, that a state-law claim connected to the HAMP must be dismissed because the HAMP does not grant a plaintiff a private cause of action. *See, e.g., Reitz v. Nationstar Mortgage, LLC*, 954 F. Supp. 2d 870, 881 (E.D. Mo. 2013) (citing *Cox v. Mortgage Electronic Registration Systems, Inc.*, 685 F.3d 663 (8th Cir. 2012)).

7

In fact, the case cited by Defendants for the proposition that the HAMP does not provide a private cause of action bolsters Plaintiffs' argument. In *Nelson*, a plaintiff sought declaratory judgment requesting the district court to determine the rights and obligations under a temporary mortgage modification agreement entered into pursuant to the HAMP. *See Nelson*, 446 F. App'x at 158-59. The Eleventh Circuit found that the district court properly dismissed the declaratory judgment claim because the HAMP did not provide borrowers a private right of action, and, as a result, it lacked subject matter jurisdiction. *Id.* In making this finding, the Eleventh Circuit cited several cases that appear to indicate that a district court lacks subject matter jurisdiction over a state law claim which merely implicates the HAMP. *Id.* at 159. For instance, two of these cited cases have held that a federal court does not have subject matter jurisdiction "over an ordinary state law claim merely because HAMP is an element of the dispute." *Melton v. Suntrust Bank*, 780 F. Supp. 2d 458, 460 (E.D. Va. 2011); *see also Mosley v. Wells Fargo Bank, N.A.*, 802 F. Supp. 2d 695, 699 (E.D. Va. 2011) (finding no subject matter jurisdiction because the complaint only alleged a state-law contract claim and not a violation of the HAMP). The fact that district courts have found a lack of federal question jurisdiction where state-law causes of action are merely incidental to the HAMP implies that a breach of contract claim is separate and distinct from a cause of action specifically asserted pursuant to the HAMP; a district court may not exercise federal question jurisdiction simply because the contract stems from the lender's involvement in the HAMP. Accordingly, Plaintiffs' state-law breach of contract claim is appropriately considered to be ancillary to any potential claim brought with regard to Defendants' obligations under the HAMP. *See Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 273-74 (E.D.N.Y. 2012) (holding that breach of contract claim asserted pursuant to a TPP was not precluded by the HAMP); *see also Dean v. BAC Home Loans Servicing*, 2012 WL

353766, at *3-4 (M.D. Ala. Feb. 3, 2012) (holding that the court did not have jurisdiction because the resolution of the plaintiff's claims would rest on an interpretation of the nature of the contract and not the HAMP guidelines).  Plaintiffs allege state-law causes of action and jurisdiction is founded upon diversity.  Absent a clear directive to the contrary, the HAMP will not preclude Plaintiffs' state-law breach of contract claim.[5]

Next, Defendants assert that Count II of the First Amended Complaint fails to state a claim under FDUTPA.  ECF No. [33] at 7-8.  As an initial matter, it must be noted that FDUTPA does not apply to "[a]ny person or activity regulated under laws administered by . . . [b]anks and savings and loan associations regulated by the Office of Financial Regulation of the Financial Services Commission . . .  and loan associations regulated by federal agencies."  Fla. Stat. § 501.212(4)(b)-(c).  Because BANA is a national banking association regulated by federal agencies, Defendants contend that it is not subject to the Act.  In Response, Plaintiffs assert that BANA was acting as a loan servicer, not a bank.  The First Amended Complaint alleges that BANA was acting through its subsidiary, BAC Home Loan Servicing.  *See* ECF No. [24] at ¶¶ 3, 9.  Thus, to hold BANA liable would require an exercise of vicarious liability.  Florida's Fifth District Court of Appeal has summarily rejected this theory of liability in interpreting FDUTPA:

> Here, the statute unambiguously excludes banks. There is nothing in the statute to suggest that a bank comes within the ambit of FDUTPA when its liability is purely vicarious. To hold otherwise would lead to an illogical result. Accepting [defendant's] theory, a

---

[5] Although the HAMP will not prohibit a private right of action, there remains a question as to whether TPP's are valid contracts.  *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1351 (S.D. Fla. 2011) ("Since the TPP Agreements are indefinite and uncertain as to material terms of the permanent loan modifications, such agreements represent, at best, unenforceable agreements to agree that do not rise to the level of a valid contract."); *see also Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 549-50 (N.D. Cal. 2012) (collecting cases from throughout the nation and summarizing the dispute).  However, because the parties have not argued this point, and there appears to be insufficient facts to make such a determination at this stage, the Court respectfully declines to opine on this matter.

> bank acting directly would be exempt from FDUTPA liability. However, if the same act was done by a bank agent, the bank could be vicariously liable under FDUTPA. We do not believe this is a result intended by the Legislature.

*Bankers Trust Co. v. Basciano*, 960 So. 2d 773, 779 (Fla. 5th DCA. 2007). However, in *Larach v. Standard Chartered Bank International*, this Court held that "[i]t would be premature at the motion to dismiss stage to determine whether Defendants were acting as banks or brokers." *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1238 (S.D. Fla. 2010). While Plaintiffs allege that BANA was acting through its subsidiary, they also aver that various interactions occurred between them and BANA, and that BANA engaged in deceptive practices with respect to the servicing of the loan. *See* ECF No. [24] at ¶¶ 13-23. Furthermore, Plaintiffs aver that Defendants' were acting through an agent engaged in loan servicing, not necessarily national banking. *See id.* at ¶ 11 (stating that the loan was transferred to "BAC Home Loans Servicing, L.P. (an entity of [BANA])"). Accordingly, a factual determination of the capacity in which BANA was acting would be hasty at this juncture. *See Larach*, 724 F. Supp. 2d at 1238; *see also Renfrow v. First Mortgage Am., Inc.*, 2011 WL 2416247, at * 3 (S.D. Fla. June 13, 2011) ("Plaintiffs are correct that the Court cannot make a factual determination at this time as to whether the Chase entity named as a defendant in the SAC is actually a national bank that falls within the statutory exceptions."). Thus, the Court declines to dismiss this claim.

Count III of the First Amended Complaint asserts a claim for civil theft. In order to state a claim for civil theft, Plaintiff must allege an injury resulting from a violation of § 812.014, Florida Statutes, the criminal theft statute. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). A defendant commits civil theft when it "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [a plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to or a benefit from the

property or (b) appropriate the property to [the defendant's] own use or to the use of any person not entitled to the property." *Id.* (citing Fla. Stat. §§ 772.11 and 812.014(1)). "In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent." *Pearson v. Wachovia Bank, N.A.*, 2011 WL 9505, at *6 (S.D. Fla. Jan. 3, 2011) (quoting *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000)). The principal allegation with respect to Plaintiffs' theft claim appears to be that Defendants, in bad faith, induced Plaintiffs "to accept the TPP which they never intended to honor, with the sole purpose of inducing [Plaintiffs] to make more payments on a loan she had decided to walk away from." ECF No. [24] at ¶ 29. Plaintiffs do not dispute the fact that they are currently unable to demonstrate felonious intent, see ECF No. [37] at 10, and it is patently obvious that the First Amended Complaint does not contain any material facts establishing criminal intent. Accordingly, even when drawing all reasonable inferences in Plaintiffs' favor, the First Amended Complaint fails to state a claim for civil theft under § 812.014, Florida Statutes.

Plaintiffs' fourth count is for fraud. Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requirement is intended to alert defendants to the "precise misconduct with which they are charged." *Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). The Eleventh Circuit has held that a party satisfies the particularity requirement when the pleading sets forth: (1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) it; (3) the content of such statements and the manner in which they caused the plaintiff to be misled; (4) what the defendants obtained as a result of the fraud. *See Zarrella v. Pac. Life Ins.*

*Co.*, 755 F. Supp. 2d 1231, 1236 (S.D. Fla. 2011) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). Defendants assert that the First Amended Complaint fails to allege any of the aforementioned particulars.

However, the Eleventh Circuit has also noted that alternative means are also available to a plaintiff attempting to plead fraud. *Durham*, 847 F.2d 1505. Indeed, this Court has found a plaintiff to satisfy the particularity requirement where the complaint identified who made the fraudulent representations and set forth the general time frame in which the misrepresentations were made, the reasons why the representations amounted to fraud, and the alleged scheme in "considerable detail." *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1092-93 (S.D. Fla. 1992). Viewing the Plaintiffs' First Amended Complaint in the lenient light afforded to *pro se* litigants, Plaintiffs have pled fraud through such alternative means. The First Amended Complaint advances an alleged pattern of deceitful conduct, informing Defendants of the "precise misconduct with which they are charged." While not necessarily the most articulate and fastidious example under Rule 9(b), the pleading generally alleges a course of dealing where Defendants utilized the TPP in order to defraud Plaintiffs of additional funds while having no intention of honoring such agreement. *See* ECF No. [24] at ¶¶ 14-20, 25, 27-29. Here, "each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation." *Colonial Penn*, 814 F. Supp. at 1092 (quoting *Seville*, 742 F.2d at 791).

In Count V, Plaintiffs assert a claim for breach of fiduciary duty. ECF No. [24] at ¶ 37. Under Florida law, a lender generally does not owe a fiduciary duty to its debtor. *See Breig v. Wells Fargo Bank, N.A.*, 2014 WL 806854, at *2 (S.D. Fla. Feb. 28, 2014); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1443 (S.D. Fla. 1995) *aff'd sub nom. Keys Jeep Eagle v. Chrysler Corp.*, 102 F.3d 554 (11th Cir. 1996); *see also Metcalf v. Leedy, Wheeler & Co.*, 191

So. 690 (Fla. 1939) (holding that no fiduciary relationship exists between parties in an arm's-length transaction); *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) ("Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."). In order to overcome this general principle, the party seeking to establish this relationship must allege "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect." *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) (citing *Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923 (Fla.1986)). Alternatively, special circumstances may create a fiduciary duty on the part of the bank, such as where the bank takes on extra services, receives a greater economic benefit than a typical transaction, or exercises extensive control. *Breig*, 2014 WL 806854, at *2.

Plaintiffs have not alleged any of these "special circumstances" in their claim for breach of fiduciary duty, nor have they asserted any other facts from which the Court may infer the creation of a fiduciary obligation. To counter Defendants contention that a fiduciary relationship does not exist, Plaintiffs assert that Defendants were acting as servicers, not lenders. ECF No. [37] at 11. However, the fact that Defendants may have been acting as loan servicers does negate the fact that Plaintiffs entered into an arms-length transaction in executing the TPP, an alleged contract. A fiduciary duty does not arise under such circumstances. *See Breig*, 2014 WL 806854, at *2 (citing *Bankest Imports*, 717 F.Supp. at 1541). Further, the First Amended Complaint does not contain any allegations where a duty could be implied by Defendants "undertaking to advise and protect" the Plaintiff. *See id.* Consequently, Plaintiffs' claim for breach of fiduciary duty is insufficient to survive a motion to dismiss.

Lastly, Plaintiffs assert a claim for negligence and negligent servicing of their loan. A claim for negligence requires three elements: a duty, breach of that duty, causation, and damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). Thus, the threshold requirement is the existence of a duty. *Id.* This determination is ultimately a question of law for the Court. *See id.* Although Plaintiffs do not explicitly note the particular duty they attempt to impart upon Defendants, this claim presumably stems from Defendants' purported fiduciary obligations. As noted, Plaintiffs cannot establish the existence of a fiduciary duty. Therefore, to the extent Plaintiffs premise their negligence claim on Defendants' purported breach of fiduciary duty, such accusations also merit dismissal.

## IV. CONCLUSION

Accepting Plaintiffs' allegations as true, drawing all reasonable inferences in their favor, and granting them the leniency generally afforded to *pro se* litigants, Counts I, II, and IV of Plaintiffs' First Amended Complaint are sufficient to survive a motion to dismiss. Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants, U.S. Bank, N.A., Wilshire Credit Corporation, and Bank of America N.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint, **ECF No. [33]**, is **GRANTED IN PART and DENIED IN PART**.
2. The Motion is **DENIED** with respect to Counts I, II, and IV.
3. The Motion is **GRANTED** with respect to Counts III, V, and VI.
    a. Count III is **DISMISSED WITHOUT PREJUDICE**.

      b. Counts V and VI are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of September, 2014.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record